WILLIAM MANLEY et al., Appellants, v. J. C. HEADINGTON, County Treasurer, et al., Appellees.

**CONSTITUTIONAL LAW:** Construction—Estoppel to Question Constitutionality of Statute. A party may not, in order to secure a benefit, cause proceedings to be had under a statute, and, after securing the benefits, assert the unconstitutionality of the statute. So held where parties petitioned for the selection of trustees to repair a drainage improvement, and later questioned the constitutionality of the statute.

*Appeal from Woodbury District Court.*—GEORGE JEPSON, Judge.

MARCH 15, 1921.

THIS is a proceeding in equity against certain public officials, including the county treasurer and the board of supervisors of Woodbury County, to enjoin the collection of certain assessments for drainage benefits, on the ground that the statute under which such assessments were made is unconstitutional and void. There was a decree dismissing the petition, and the plaintiffs appeal.—*Affirmed.*

*Griffin, Griffin & Griffin,* for appellants.

*Henderson, Fribourg & Hatfield, O. T. Naglestad,* and *Alfred Pizey,* for appellees.

EVANS, C. J.—The statute under attack is Chapter 53 of the Acts of the Thirty-sixth General Assembly (Section 1989-a61 *et seq.,* Supplemental Supplement, 1915). This statute provides for the selection of so-called trustees in a drainage district, who shall be charged with the duty of repair and maintenance of the drainage improvement constructed in the district. Large powers purport to be given to the trustees, pursuant to such statute, and it is averred that the power thus conferred is in violation of various provisions of the Constitution of the state and of the Constitution of the United States. Under the record before us, a preliminary question stands between the plaintiffs and a consideration of the constitutional objections presented by them.

The district in question comprises 51,000 acres. It was established in 1905. The drainage improvement, consisting of a main drain 19 miles in length and many laterals, was completed in due course, at a cost to the district of $172,000. We infer from the record that the main drain and many of the laterals were open ditches, and that in time they suffered more or less in their efficiency by the deposit of silt therein. After the expiration of 10 years, to wit, in 1915, a petition was presented to the board of supervisors for the appointment of trustees, pursuant to the statute already referred to, with a view of cleaning out the silt deposits which had accumulated since the construc-

tion of the drain. The board of supervisors granted that peti-
tion, and set the statute in motion to that end. The trustees
were selected in the manner provided by the statute. They em-
ployed an engineer, who reported the nature of the repairs re-
quired and the probable cost thereof at $96,000. The report
was adopted by the trustees, and contracts were let to one Whit-
ney for the dredging of the various open drains. Whitney has
performed the work almost to completion, at a cost of about
$84,000. The assessed value of the real estate in the district is
about $3,500,000. The plaintiffs were all signers of the petition
referred to. During the two years when Whitney's work was
in progress, they all stood by and saw the work done and the
expense incurred and the benefits that accrued to them respec-
tively, without objection. That is to say, they have deferred
their challenge of the statute until after they have secured the
benefits of the performance of Whitney's contract. To this state-
ment there should be the qualification that, at one time, a protest
was filed with the trustees by some of the plaintiffs. The exact
nature and scope of the protest are not disclosed, because it was
not preserved. The utmost that can fairly be said, under the
evidence, is that they insisted that the cost of the repair should
be paid for out of the repair fund on hand, which is variously
estimated in the testimony at from $9,000 to $20,000.

The repair was of such a nature that it could not be par-
tially performed with any resulting benefit. It involved the
dredging of the entire course of the various drains. It involved
a removal of all bridges for that purpose. The work was done
with a floating dredge boat. It is made to appear that the
dredging would have to be carried forward to the full length of
the drain, in order to be serviceable at all. Nor does it appear
that such alleged protest was made before the contract was en-
tered into. There is no claim made here that the work contracted
for was unnecessary, or that the cost thereof was unreasonable.
The plaintiffs, having set the statute in motion, and having se-
cured its objective in the form of benefit to themselves, could
not lift the equitable estoppel thus created, if any, by merely
protesting against the reasonable cost thereof. Especially would
this be so where it does not appear that the protest was made
before the cost was contracted for, or before substantial benefits

had accrued therefrom to the protesting parties. Even if we were to hold the statute itself unconstitutional, the facts here appearing would furnish a sufficient basis for equitable relief, as against the plaintiffs, for benefits voluntarily sought and received. The classification upon which benefits were assessed had been fixed in the original proceedings. This classification was in no-manner departed from in the matter of assessing benefits for the repair work. Such classification was known to the plaintiffs at the time of the petition for the repair. By such petition they may well be deemed to have consented to such classification and to their liability for benefits proportionate to such classification.

For the reasons here indicated, we think the plaintiffs are equitably estopped from now challenging the constitutionality of the statute in reference to this proceeding. We shall not, therefore, inquire into the constitutionality of the same. *Thompson v. Mitchell*, 133 Iowa 527. The decree entered below is, accordingly,—*Affirmed.*

All the justices concur.